Filed 7/16/21  W.M. v. Superior Court CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| W.M.,<br><br>      Petitioner,<br><br>      v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>      Respondent;<br><br>SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>      Real Party in Interest. | D078633<br><br>(Super. Ct. Nos. J519828A-B) |

ORIGINAL PROCEEDINGS in mandate.  Browder A. Willis III, Judge. Petition granted; stay vacated.

Dependency Legal Services of San Diego and Melissa A. Chaitin for Petitioner.

No appearance by Respondent.

Caitlin E. Rae, Chief Deputy County Counsel, and Eliza Molk, Deputy County Counsel, for Real Party in Interest San Diego County Health and Human Services Agency.

By petition for extraordinary writ pursuant to California Rules of Court, rule 8.452, Father (W.M.) challenges the juvenile court's February 17, 2021 orders granting the petitions filed by the San Diego County Health and Human Services Agency (Agency), pursuant to Welfare and Institutions Code section 387,[1] as to his sons (D.M. and S.M.). The court's orders sustained the Agency's allegations regarding the children's mother, G.N. (Mother); found by clear and convincing evidence that the children should continue to be removed from Mother pursuant to section 361, subdivision (c); found placement with Father would be detrimental to them; terminated services for both Mother and Father; and set a section 366.26 permanency planning hearing for the children.

In his appeal of the court's prior January 4, 2021 orders granting the Agency's section 388 petitions (case No. D078474), which we considered together with this writ petition, Father separately argued that the court reversibly erred by applying an incorrect legal standard of proof in deciding the section 388 petitions and removing the children from his physical custody in violation of section 361, subdivision (c)'s requirements. In *In re D.M.* (July 16, 2021, D078474) [nonpub. opn.] (*D.M.*), issued concurrently with our opinion in this case, we agreed with this portion of Father's argument on appeal and reversed the court's January 4, 2021 orders.

In the instant petition, Father contends that the juvenile court's February 17, 2021 orders are erroneous, presumably to the extent they

---

[1]     All statutory references are to the Welfare and Institutions Code.

pertain to him, because they were based on its January 4, 2021 findings and orders, which were erroneously made. We agree with Father that writ relief is warranted in this case and issue a peremptory writ of mandate directing the court to vacate its February 17, 2021 orders granting the section 387 petitions and enter new orders as directed.

FACTUAL AND PROCEDURAL BACKGROUND

Because we consider this case together with Father's appeal in case No. D078744, we incorporate our discussion of the factual and procedural background from that case.[2] We provide a condensed summary here and refer the reader to our opinion in *D.M.*, for a more extensive discussion.

In August 2018, the Agency filed section 300, subdivision (b) dependency petitions for D.M. and S.M., alleging they had suffered, or there was a substantial risk they would suffer, serious physical harm or illness as a result of Mother's failure to supervise them adequately. At their detention hearing, the court found the Agency had made prima facie showings on the petitions and detained the children out of the home.

At the October contested jurisdiction and disposition hearing, the court found true the petitions' allegations, removed the children from Mother's custody, found there was no noncustodial parent (i.e., Father) able or willing to assume custody of them, and placed them in licensed foster care. The court also approved the Agency's case plans for Mother and Father and ordered reunification services for them.

In its six-month status review report, the Agency stated that both parents had made moderate progress on their case plans. The Agency

---

[2]    This court also issued an order on April 16, 2021, stating we would consider the records in both cases together.

3

recommended that reunification services be continued for both parents for an additional six months.

At the continued six-month review hearing in June 2019, the court found both parents had made moderate progress on their case plans, granted overnight visitation for Mother, and ordered that the parents continue receiving reunification services. The court also gave the Agency discretion to allow the parents to have a 60-day trial visit with the children, with the concurrence of the children's counsel.

In its 12-month status review report, the Agency stated that the children began a 60-day trial visit with Mother and Father in late June. Father was working full-time and Mother provided care for the children during the day. Although Mother and Father were no longer in a relationship, Mother was pregnant and Father was the other biological parent. The Agency recommended that the court continue the children as dependents and place them with both Mother and Father with family maintenance services.

In October 2019, the court conducted the 12-month review hearing. The court continued the children as dependents of the court, found placement with Mother and Father would not be detrimental to them, ordered placement of the children with both parents within a few days after its order, and ordered that the Agency provide them family maintenance services.

In early January 2020, the Agency filed section 388 petitions to modify the court's prior October 2019 orders placing the children with Mother and Father. The petitions alleged that the Agency had received a referral reporting sexual abuse by Father against D.M. in mid-December 2019, and that in forensic interviews in late December D.M. and S.M. disclosed sexual abuse by Father. The Agency requested new orders suspending Father's

4

visits with the children pending the outcome of the Agency's investigation and that the court's October 2019 order be changed from placement with both Mother and Father to placement solely with Mother.

The court found the Agency made prima facie showings on its section 388 petitions, suspended Father's visits with the children, detained the children solely with Mother, gave the Agency discretion to return their placement to Mother and Father, and set a contested hearing date on the section 388 petitions.

In July 2020, the court ordered that Father have short supervised visits with the children. In an August addendum report, the Agency stated that the children's visits with Father had gone well, and Mother had not observed any negative behaviors after their visits with him.

In early October 2020, the Agency filed section 387 supplemental petitions on behalf of the children, alleging that Mother had expressed she could no longer care for the children and requested their placement in foster care. The Agency recommended that the children be detained in foster care and that they not be placed with Father because of concerns regarding sexual abuse and because he had not mitigated that protective issue.

At the detention hearing on the section 387 petitions, the court detained the children in foster care, and vacated the date for the contested hearing on the section 388 petitions to trail the jurisdiction and disposition hearing on the section 387 petitions. In its subsequent October 2020 jurisdiction and disposition report, the Agency recommended that the court sustain the section 387 petitions and find, by clear and convincing evidence, that D.M. and S.M. should continue to be removed from the custody of their parents pursuant to section 361, subdivision (c). It further recommended that the court find placement with their parents would be detrimental to the

5

children.  The Agency recommended that the court place the children in foster care, terminate the parents' services, and set a section 366.26 permanency planning hearing for the children.  The court ultimately continued the contested section 387 jurisdiction and disposition hearing, as well as the contested section 388 hearing, until early January 2021.

At the January 4, 2021 contested hearing, the court initially continued the hearing on the section 387 supplemental petitions and then proceeded with the contested hearing on the section 388 modification petitions.  Applying a preponderance of the evidence standard, the court granted the Agency's section 388 petitions and effectively removed the children from Father.  The court placed the children solely with Mother pending further court orders, although they were to remain with their current foster parents until Mother had sustainable housing.

Father timely filed a notice of appeal challenging the January 4, 2021 orders granting the section 388 petitions.  In *D.M.*, we concluded the juvenile court erred by applying an incorrect standard of proof in deciding the section 388 petitions, reversed the orders, and remanded with directions.

On February 17, 2021, the court held the contested hearing on the Agency's section 387 supplemental petitions.  The court ordered that the children continue to be removed from Mother pursuant to section 361, subdivision (c), found that placement with Father would be detrimental to them, ordered that the reunification services for both Mother and Father be terminated, and set a section 366.26 permanency planning hearing for the children.

Father timely filed the instant writ petition challenging the court's February 17, 2021 orders.  Father requested that we issue a stay of the

6

section 366.26 hearing. On June 4, 2021, we issued a stay of that hearing, pending the finality of our decisions in case Nos. D078474 and D078633.

DISCUSSION

Father contends the juvenile court erred by issuing its February 17, 2021 orders terminating his reunification services and setting a section 366.26 hearing for the children because those orders were based on erroneous findings and orders at the January 4, 2021 hearing on the Agency's section 388 petitions. The Agency responds that the court, in effect, cured its errors at the January 4, 2021 hearing by making the necessary section 361, subdivision (c) findings—by clear and convincing evidence—at the February 17, 2021 hearing on the section 387 petitions. We agree with Father.

A

As we concluded in *D.M.*, *supra*, the juvenile court erred by applying an incorrect standard of proof in deciding the section 388 petitions at the January 4, 2021 hearing, requiring this court to reverse those orders and remand with directions. Specifically, we concluded the court did not apply the standard of proof under section 361, subdivision (c) for removal of a child from his or her custodial parent, which requires the Agency to prove, by *clear and convincing evidence*, there is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the children if they are returned to Father's physical custody, and there are no reasonable means by which their physical health could be protected without removing them from Father's physical custody. (*D.M.*, *supra*, D078474, at pp. 10-11, 19.)

Contrary to the Agency's assertion, the court did *not* apply the section 361, subdivision (c) standard of proof as to Father when it issued its

7

February 17, 2021 orders approving the Agency's section 387 petitions. Although the record shows the court may have initially indicated it would make the requisite findings under section 361, subdivision (c) regarding both Mother and Father, it ultimately made those findings only regarding Mother. Prior to the section 388 hearing (on January 4, 2021) and the section 387 hearing (on February 17, 2021), the Agency had recommended that the court find, by clear and convincing evidence, that D.M. and S.M. should continue to be removed from the custody of their *parents* pursuant to section 361, subdivision (c) because there was or would be a substantial danger to their physical health, safety, protection, or physical or emotional well-being if they were returned home and there were no reasonable means by which their physical health could be protected without removing them from their parents' physical custody.[3] The Agency further recommended that the court find placement with the parents would be detrimental to the children.[4] The Agency continued to make the same recommendations in its December 2020 addendum report, two January 2021 addendum reports, and its February 2021 addendum report.

At the February 17, 2021 hearing on the section 387 petitions, the court received in evidence the Agency's reports and heard the testimony of Mother and Agency social worker Arantxa Buenrostro. In closing argument, the Agency's counsel requested that the court follow its recommendations, adding that counsel had "several changes to them when the court is ready after the court makes [its] ruling." The court noted, among other things, that it had

---

[3]     These recommendations are contained in No. 9 of the Agency's October 2020 jurisdiction and disposition report for its section 387 petitions.

[4]     This recommendation is contained in No. 17 of the same report.

considered the evidence showing Father had sexually abused D.M. and S.M. and that the children had expressed trauma associated with that abuse in the prior month. The court found further reunification services for Father would not enable him to protect the children and ordered that his reunification services be terminated. The court *initially* indicated that it would adopt the recommendations in the Agency's October 2020 jurisdiction and disposition report and, in particular, that there was clear and convincing evidence that the children "should continue to be removed *from the parents* as to [*sic*] the substantial risk that exists." (Italics added.) However, the Agency's counsel immediately interjected and stated that "before the court gets going" the Agency had certain changes to its original recommendations. The Agency's counsel then specified those changes, stating: "[No. 9] should be removal from 'the mother,' not 'the parents.'" Likewise, the Agency's counsel stated that "[i]n [No.] 17 that the court delete 'parents' and replace [it] with 'father.' Placement with the father would be detrimental." The court accepted those changes, stating, "All right." The Agency's counsel then submitted the matter, noting that its October 2020 report "was written quite a while ago."

After hearing the Agency's changes, the court stated it was "adopt[ing] the [Agency's] recommendations with the following modifications: [No.] 9 is modified to delete 'parent[s]' [and] inserting 'mother.' . . . [No.] 17 is modified to delete 'parents.' Placement with 'father' would be detrimental to the children. The children are placed in licensed foster care. [¶] The court[-]mandated reunification services are terminated." The court adopted the Agency's remaining recommendations and set a section 366.26 permanency planning hearing for June 16, 2021.

The court's minute orders for the February 17, 2021 hearing reflect the court's findings sustaining the Agency's section 387 petitions and its adoption

9

of the Agency's recommended findings from its October 2020 report, *as modified at the hearing*.  In particular, the orders state:

> "There is clear and convincing evidence [D.M./S.M.] should continue to be removed from the custody of [M]other pursuant to . . . section []361[, subdivision ](c) for the following reason(s):  There is or would be substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from [Mother's] physical custody.
> [¶] . . . [¶]

> "Placement with the [F]ather would be detrimental to [D.M./S.M.]."

The orders then reflect that the court terminated Mother's and Father's reunification services and set a section 366.26 permanency planning hearing for D.M. and S.M. for June 16, 2021.

### B

Contrary to the Agency's proffered interpretation of the record, there is only one reasonable interpretation of the juvenile court's findings and orders at the February 17, 2021 hearing.  Specifically, the court made its section 361, subdivision (c) finding, by clear and convincing evidence, *only as to Mother*.  The excerpts from the reporter's transcript and clerk's transcript, as quoted above, confirm that the court did not make any section 361, subdivision (c) finding as to Father at the February 17, 2021 hearing.  At most, the court found it would be detrimental to the children if they were placed with Father.  However, that finding was not made either by clear and convincing evidence or by application of section 361, subdivision (c)'s standard of proof.  Absent a section 361, subdivision (c) finding, by clear and convincing evidence, at either the February 17, 2021 hearing or the previous

10

January 4, 2021 hearing (as discussed in *D.M.*), the court's February 17, 2021 orders were erroneous to the extent they related to Father and his physical custody of the children.  Because the court erred by terminating services for Father and setting a section 366.26 permanency planning hearing for the children without the required findings as to Father, we conclude Father's petition should be granted.

## DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to vacate its February 17, 2021 orders and enter new orders consistent with this opinion and our opinion in *D.M.*  The stay issued on June 4, 2021 is vacated upon finality of those opinions as to this court.  (Cal. Rules of Court, rule 8.490(b)(2).)


GUERRERO, J.

WE CONCUR:


IRION, Acting P. J.


DO, J.


11